**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **DAVID M. RITTER and DIANE F. RITTER,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 21-cv-10815-DJC** |
| ) | |
| **JERRY JOHNSON,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, J.**                                                                 **July 21, 2022**

## I.      Introduction

Plaintiffs David Ritter and Diane Ritter (collectively, "Ritters") have filed this lawsuit against Defendant Jerry Johnson ("Johnson") alleging breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II) and promissory estoppel (Count III) arising from a real property transaction. D. 1. The Ritters now move for partial summary judgment on Count I. D. 39. Johnson cross-moves for partial summary on the same count. D. 54. For the reasons stated below, the Court ALLOWS the Ritters' motion, D. 39, and DENIES Johnson's motion, D. 54.

## II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>,

217 F.3d 46, 52 (1st Cir. 2000) (citation omitted).  "A genuine issue exists where a reasonable jury could resolve the point in favor of the nonmoving party."  Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (citation and internal quotation marks omitted).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest upon the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010).  The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

The following facts are undisputed unless otherwise noted and are drawn from the Ritters' statement of undisputed material facts, D. 39-2, Johnson's response to the Ritters' statement of material facts and statement of additional material facts, D. 50, and accompanying documents.

On April 8, 2021, David Ritter sent Johnson a letter stating his desire to purchase a property owned by Johnson in West Tisbury, Massachusetts ("Property").  D. 50 ¶ 59; see D. 49-8.  The letter proposed various terms.  See D. 49-8 at 2.  It also acknowledged that Johnson had "the house rented for a number of weeks for the summer of 2021" and expressed that the Ritters were willing "to assume those rentals post-closing and/or discuss adjusting closing of the transaction to allow [Johnson] to capture some/all of these rentals."  D. 50 ¶ 80; see D. 49-8 at 2.  The letter, further, suggested to Johnson that, "[s]hould [he] wish to use the subject property [him]self in 2021 post-closing, [the Ritters] would be happy [to] discuss how [they] could make that happen."  D. 50 ¶ 84;

see D. 49-8 at 2–3.

David Ritter submitted an offer to purchase ("OTP") the Property to Johnson on April 10, 2021.  D. 39-2 ¶ 2; D. 50 ¶ 2.  The OTP identified the Property and the purchase price of two million two hundred seven thousand five hundred dollars ($2,207,500.00).  D. 39-2 ¶¶ 3–4; D. 50 ¶¶ 3–4.  The OTP required that a purchase and sales agreement ("P&S") be executed by May 4, 2021, identified the closing date as no later than July 16, 2021 and stated that "[t]ime [was] of the essence."  D. 39-2 ¶¶ 6–7, 10; D. 50 ¶¶ 6–7, 10.

The OTP identified several contingencies.  See D. 39-2 ¶ 11; D. 50 ¶ 11.  For example, the OTP stated that the offer was "contingent upon" a "mutually acceptable Purchase and Sales Agreement."  D. 39-2 ¶ 14; D. 50 ¶ 14; see D. 39-5 at 3.  The OTP further required a satisfactory home inspection of the Property, that Johnson provide a Title 5 report to David Ritter, that David Ritter obtain a loan, that two Virginia properties be sold and that the buyer pay a land bank fee if applicable.  D. 39-2 ¶¶ 12–13, 15–17; D. 50 ¶¶ 12–13, 15–17.

The OTP stated:  "[t]his is a legally binding contract.  If not understood, seek competent advice."  D. 39-2 ¶ 18; D. 50 ¶ 18.  The OTP also stated that, if the seller failed to fulfill his obligations under the agreement, "said agreement shall be enforceable both at law and in equity (inclusive of specific performance)."  D. 39-2 ¶ 8; D. 50 ¶ 8.  Both David Ritter and Johnson signed the OTP.  D. 39-2 ¶¶ 20–21; D. 50 ¶¶ 20–21.  Johnson read the OTP before signing the document and was represented by counsel when he signed.  D. 39-2 ¶¶ 22–23; D. 50 ¶¶ 22–23.

After David Ritter and Johnson signed the OTP, Diane Ritter was added as a buyer to satisfy the requirements for a "1031B exchange."  D. 39-2 ¶ 25; D. 50 ¶ 25.  The parties also satisfied several of the contingencies identified in the OTP.  See D. 39-2 ¶¶ 27–31; D. 50 ¶¶ 27–31.  The Ritters obtained a home inspection of the Property, obtained a mortgage and conveyed

the two Virginia properties referenced in the OTP.  D. 39-2 ¶¶ 27, 29–31; D. 50 ¶¶ 27, 29–31.

Johnson provided the Ritters with a Title 5 report.  D. 39-2 ¶ 28; D. 50 ¶ 28.

Johnson's counsel and the Ritters' counsel negotiated the terms of the P&S.  D. 39-2 ¶ 26;

D. 50 ¶ 26.  The draft P&S included the same purchase price as the OTP.  See D. 39-2 ¶ 32; D. 50

¶ 32.  It also required Johnson to provide a Title 5 certificate of compliance, required the Ritters

to obtain a mortgage, required the Ritters to pay the land bank fee, included a closing date of July

8, 2021 in compliance with the OTP requirement that it occur no later than July 16, 2021, and

stated that "time [was] of the essence."  D. 39-2 ¶¶ 33–38; D. 50 ¶¶ 33–38; see D. 39-2 ¶ 7; D. 50

¶ 7.  Based upon conversations with the Ritters' counsel, Johnson requested revisions to the draft

P&S.  D. 39-2 ¶ 39; D. 50 ¶ 39.  On May 4, 2021, the Ritters paid a deposit of one hundred

thousand dollars ($100,000.00) pursuant to the OTP and executed the P&S.[1]  D. 39-2 ¶¶ 40–41;

D. 50 ¶¶ 40–41.  After further negotiation, paragraph 22, a provision regarding release by

Johnson's wife, was removed from the P&S.[2]  D. 39-2 ¶ 44; D. 50 ¶ 44; see D. 39-1 at 7.  The

Ritters executed a revised P&S received from Johnson's counsel on May 7, 2021.  D. 39-2 ¶¶ 44–

46; D. 50 ¶¶ 44–46.  Johnson did not execute the P&S.  D. 39-2 ¶ 47; D. 50 ¶ 47.

On May 10, 2021, Johnson's counsel sent the Ritters' counsel a letter requesting that the

Ritters agree to terminate the transaction.  D. 39-2 ¶¶ 48–49; D. 50 ¶¶ 48–49; see D. 39-17 at 2

(stating that Johnson "hope[s] that the [Ritters] will agree . . . to terminate this transaction" and

"now regrets that he signed the [OTP] without obtaining his wife's assent to the sale, as he should

---

[1] The parties dispute whether all of Johnson's requested revisions had been incorporated into the draft P&S by May 4, 2021.  See D. 39-2 ¶ 42; D. 50 ¶ 42.

[2] The parties dispute the facts surrounding the removal of paragraph 22.  See D. 39-2 ¶ 43; D. 50 ¶ 43.  While the Ritters assert that Johnson requested the removal, D. 39-2 ¶ 43, Johnson testified that he did not make the request and that the parties' counsel decided to remove the paragraph, D. 50 ¶ 43.

have").

## IV.     Procedural History

The Ritters commenced this action on May 17, 2021.  D. 1.  Johnson moved to dismiss Count I, the breach of contract claim, D. 29, and the Court denied the motion, D. 38.  The Ritters now move for partial summary judgment on the same claim, Count I.  D. 39.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 53.  Following the motion hearing, Johnson cross-moved for partial summary judgment on Count I.  D. 54.

## V.      Discussion

The Ritters argue that the Supreme Judicial Court's decision in McCarthy v. Tobin, 429 Mass. 84 (1999), dictates that the OTP alone binds the parties and justifies specific performance of the transaction.  See D. 39-1 at 3–4.  McCarthy held that an OTP was a binding and enforceable contract to convey real property despite language contemplating the execution of a final written agreement.  McCarthy, 429 Mass. at 88.  There, the buyer and seller executed an OTP "[s]ubject to a Purchase and Sale Agreement satisfactory to Buyer and Seller."  Id. at 85.  The buyer executed the P&S, but the seller refused to sell.  Id. at 86.  In deciding whether the OTP was binding, McCarthy stated that "[t]he controlling fact is the intention of the parties."  Id. at 87 (citations omitted).  The seller argued "that language contemplating the execution of a final written agreement [gave] rise to a strong inference that she and [the buyer] have not agreed to all material aspects of a transaction and thus that they do not intend to be bound."  Id.  The court concluded, however, that "[i]f . . . the parties have agreed upon all material terms, it may be inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract."  Id. (citation omitted).  "The OTP contained, among other provisions, a description of the property, the price to be paid, deposit requirements, limited

5

title requirements, and the time and place for closing." Id. at 85. "The remaining terms covered by the purchase and sale agreement were subsidiary matters which did not preclude the formation of a binding contract." Id. at 86. The Ritters contend that the OTP here includes all material terms of the parties' agreement and, thus, that the OTP is enforceable under McCarthy despite that Johnson did not sign the P&S. See D. 39-1 at 3–4, 8–9.

Johnson responds that the OTP is unenforceable because the parties did not satisfy all its conditions precedent, since the offer was "contingent upon" the signing of a "mutually acceptable Purchase and Sales Agreement," which both parties did not do. D. 49 at 3, 7–14. Johnson also argues that the OTP did not include certain material terms to the transaction that the parties intended to address in the P&S. Id. at 2, 14–20.

Even viewing the record in the light most favorable to Johnson, the Court concludes that the OTP is enforceable as a matter of law under McCarthy. As explained by McCarthy, "[t]he controlling fact is the intention of the parties." McCarthy, 429 Mass. at 87 (citations omitted). "To ascertain intent, a court considers the words used by the parties, the agreement taken as a whole, and surrounding facts and circumstances." Mass. Mun. Wholesale Elec. Co. v. Town of Danvers, 411 Mass. 39, 45–46 (1991). McCarthy "instructed that if the parties did not intend to be bound by an OTP that they should employ language to that effect." Sanborn v. Hirsch, No. 071535, 2009 WL 323392, at *3 (Mass. Super. Ct. Jan. 13, 2009) (denying summary judgment where language in OTP indicated that the signing of a P&S by the parties was not a mere "formality" but would "become the agreement between the parties"); see McCarthy, 429 Mass. at 88 n.3 (stating that "[i]f parties do not intend to be bound by a preliminary agreement until the execution of a more formal document, they should employ language such as that suggested by the Appeals Court"); McCarthy v. Tobin, 44 Mass. App. Ct. 274, 279 n.10 (1998) (identifying contract

language that parties could use to avoid being bound by an OTP).

Here, the OTP's language reflects the parties' intent to be bound, stating: "[t]his is a legally binding contract.  If not understood, seek competent advice."  D. 39-5 at 3; see McCarthy, 429 Mass. at 85 (describing OTP as providing "NOTICE" of being "a legal document that creates binding obligations" and cautioning parties to "consult an attorney" "[i]f not understood").  The OTP also states that "[i]f you (Seller) do not fulfill your (Seller's) obligations under this agreement, said agreement shall be enforceable both at law and in equity, (inclusive of specific performance)." D. 39-5 at 2.  Further, the OTP does not include language "such as that suggested by the Appeals Court" to indicate that the "parties do not intend to be bound by a preliminary agreement until the execution of a more formal document."  See McCarthy, 429 Mass. at 88 n.3; McCarthy, 44 Mass. App. Ct. at 279 n.10.

Johnson urges that the OTP's "contingent" language constitutes an "emphatic" word creating a condition precedent.  See D. 49 at 11–14; Mass. Mun. Wholesale Elec. Co., 411 Mass. at 46 (stating that "'[e]mphatic words' are generally considered necessary to create a condition precedent that will limit or forfeit rights under an agreement" and citing "on condition that," "provided that" and "if" as phrases "one would expect to see if the parties intended to create a condition precedent").  According to Johnson, McCarthy is distinguishable because the OTP there stated only that it was "[s]ubject to" a P&S, McCarthy, 429 Mass. at 85, whereas here the OTP states that the offer is "contingent upon" such agreement, D. 39-5 at 3.  See D. 49 at 13. Subsequent Massachusetts cases, however, identify the McCarthy OTP as creating a condition. See, e.g., Ferguson v. Maxim, 96 Mass. App. Ct. 385, 392 (2019) (describing the McCarthy offer as being "conditioned on [a] future agreement"); Kurker v. Shoestring Props. Ltd. P'ship, 68 Mass. App. Ct. 644, 653–54 (2007) (stating that the McCarthy OTP "provided that the parties'

obligations to each other would be extinguished without the execution of a subsequent purchase and sale agreement").  The McCarthy OTP's "subject to" language, therefore, provides no basis for distinguishing it from the OTP here.

The OTP also includes all the material terms of the parties' agreement, giving rise to an inference that the parties intended for the OTP to bind them.  See McCarthy, 429 Mass. at 87 (concluding that defendant manifested his intent to be bound where remaining issues were "ministerial and nonessential terms of the bargain" (quoting McCarthy, 44 Mass. App. Ct. at 276)). Whether a term is material is "addressed based on the status of things at the time the parties signaled that an agreement had been reached." Duff v. McKay, 89 Mass. App. Ct. 538, 544 (2016) (citations omitted) (explaining that "[t]he fact that the negotiations eventually were scuttled over an issue does not mean that it necessarily was an essential term of the settlement").  While "resolution of . . . fact questions," including whether "there were material terms yet to be negotiated," are "generally reserved for the jury," Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 879 (2000), "[i]f the evidence . . . is uncontradicted, the question is for the court," id. (quoting David J. Tierney, Jr., Inc. v. T. Wellington Carpets, Inc., 8 Mass. App. Ct. 237, 239 (1979)).

Among other terms, the OTP contains a description of the property to be conveyed, the purchase price, deposit requirements and the closing date.  D. 39-5 at 2–3.  Such terms are sufficient to establish a binding OTP.  See McCarthy, 429 Mass. 86 (stating that "the OTP adequately described the property to be sold and the price to be paid" and "[t]he remaining terms covered by the purchase and sale agreement were subsidiary matters which did not preclude the formation of a binding contract"); Fallon v. Batchelder, 60 Mass. App. Ct. 1110 (2004) (Rule 1:28 decision) (stating that "[t]he requisite intent to be bound by the terms of an offer to purchase real

estate is established if the offer adequately describes (1) the property to be bought; (2) the price to be paid; and (3) the closing date, or the mechanism for determining it"); Barry v. Thayer, No. 030307, 2006 WL 833079, at *4 (Mass. Super. Ct. Feb. 16, 2006) (same). Moreover, these material terms did not change between the OTP and the P&S signed by the Ritters. Compare D. 39-5 with D. 39-7. The Court, therefore, may infer that the parties intended the P&S "to serve as a polished memorandum of an already binding contract." See McCarthy, 429 Mass. at 87 (citation omitted).

Johnson argues that the parties here failed to agree upon at least two material aspects of the transaction: how rental income from a lease of the Property would be allocated and Johnson's use of the Property after closing. D. 49 at 14–20; D. 60 at 3-7. For support, Johnson submits the April 8, 2021 letter in which David Ritter expressed his desire to purchase the Property from Johnson.[3] D. 50 ¶ 59; see D. 49-8 at 2–3. David Ritter acknowledged that "the house [was] rented for a number of weeks for the summer of 2021" and expressed that the Ritters were willing "to assume those rentals post-closing and/or discuss adjusting closing of the transaction to allow [Johnson] to capture some/all of these rentals." D. 50 ¶ 80; see D. 49-8 at 2. David Ritter, further, indicated to Johnson that, "[s]hould [Johnson] wish to use the subject property [him]self in 2021 post-closing, [the Ritters] would be happy [to] discuss how [they] could make that happen." D. 50 ¶ 84; see D. 49-8 at 2–3. Johnson asserts that he wanted to retain the full summer rental income and that

---

[3] When assessing contractual ambiguities, courts may "consult extrinsic evidence including the circumstances of the formation of the agreement and the intentions and objectives of the parties." Browning-Ferris Indus., Inc. v. Casella Waste Mgmt. of Mass., Inc., 79 Mass. App. Ct. 300, 307 (2011); see McDonald's Corp. v. Rappaport, 532 F. Supp. 2d 264, 269 (D. Mass. 2008) (explaining that "[t]he parol evidence rule only bars the introduction of prior or contemporaneous written or oral agreements that contradict, vary, or broaden an integrated writing" and "does not bar extrinsic evidence that elucidates the meaning of an ambiguous contract term" (quoting Kobayashi v. Orion Ventures, 42 Mass. App. Ct. 492, 496 (1997))).

the parties continued to negotiate that issue after the OTP's signing but never reached an agreement. D. 49 at 15–16; D. 60 at 4-6; see D. 50 ¶¶ 42, 81; D. 49-6 at 6–7. As Johnson observes, one of the brokers suggested on May 4, 2021 that "the best way to handle the summer rental" would be "to request to move the closing date until after the rental has happened." See D. 50 ¶ 82; D. 49-14 at 2. Johnson, further asserts that the parties also did not reach agreement on Johnson's post-closing use of the Property. D. 50 ¶ 84; D. 60 at 6-7; see D. 49-1 ¶ 15. Moreover, David Ritter acknowledged the ongoing negotiations in an email after the OTP's signing in which he referenced "horse trading," which he later clarified he meant as a "euphemism" for "negotiat[ing]." See D. 50 ¶¶ 70–71; D. 49-9 at 3; D. 49-4 at 22–23. Johnson claims that, "[b]ut for [David] Ritter having indicated in his letter that [the parties] would work out the details concerning the summer rental and [Johnson's] family's use of the home post-closing, [Johnson] never would have signed the OTP." D. 49-1 ¶ 13; D. 50 ¶ 86.

These facts, however, fail to establish a triable issue of fact as to whether "there were material terms yet to be negotiated," see Situation Mgmt. Sys., 430 Mass. at 879, as opposed to "ministerial and nonessential terms of the bargain," see McCarthy, 429 Mass. at 87 (quoting McCarthy, 44 Mass. App. Ct. at 276). Although the Appeals Court has considered terms other than those listed in McCarthy to be material to a real property transaction, see Coldwell Banker/Hunneman v. Shostack, 62 Mass. App. Ct. 635, 639–40 (2004), such is not warranted here. The seller in Coldwell Banker included a clause in the OTP, which both parties signed, that the "seller retains the right to use the garage for storage for up to 60 days after the closing." Id. at 636. The OTP also included language indicating the later execution of a P&S by a certain date. Id. Prior to that date, the seller and buyer attempted, but failed, to negotiate the conditions of the seller's right to use the garage for storage as referenced in the OTP. Id. at 636–37 (describing

how sellers rejected buyers' proposal to limit seller's use of property on "dead storage" basis, since "[t]he seller had already moved to Israel, and her husband was in the process of moving").  The buyer later executed a P&S after the deadline passed; the seller did not execute the proposed P&S.  Id. at 637.  Considering whether the OTP constituted a binding agreement, Coldwell Banker concluded that McCarthy did not control because "the summary judgment record [made] it clear that the storage clause was material to the seller and her husband because of their particular situation."  Id. at 639 (stating that the buyers' "conduct indicated that they did not intend the OTP to be a binding contract because there was no agreement on a material term," given that "they insisted on negotiating conditions under which the garage could be used for storage instead of incorporating the unadorned clause . . . specified in the OTP").

While the summary judgment record here indicates that the parties failed to reach agreement on the summer rental income and Johnson's post-closing use of the Property, it does not "make[] . . . clear" that those terms were so essential to the transaction as to be material.  See id.  For example, unlike in Coldwell Banker, the parties here did not include any reference in the OTP to these terms.  See id. at 636; D. 39-5.  The record, moreover, lacks evidence that Johnson's counsel proposed changes to the P&S based upon these terms despite seeking revisions to the P&S regarding other terms.  See D. 39-2 ¶¶ 39, 44; D. 50 ¶¶ 39, 44; cf. Coldwell Banker, 62 Mass. App. Ct. at 636–37 (describing parties' negotiations regarding disputed term).  Further, David Ritter's reference to "horse trading," D. 50 ¶¶ 70–71, and the broker's suggestion that "the best way to handle the summer rental" would be "to request to move the closing date until after the rental has happened," id. ¶ 82, do not indicate a lack of intent to be bound by the OTP but, rather, reflect the kind of "subsidiary matters which [do] not preclude the formation of a binding contract.  See McCarthy, 429 Mass. at 86–87 (stating that, "[a]lthough the provisions of the purchase and sale

agreement can be the subject of negotiation, norms exist for their customary resolution" and "[i]f parties specify formulae and procedures that, although contingent on future events, provide mechanisms to narrow present uncertainties to rights and obligations, their agreement is binding" (citations and internal quotation marks omitted)); see also id. at 88–89 (holding that seller waived deadline for execution of P&S by continuing negotiations); D. 39-2 ¶ 45; D. 50 ¶ 45 (stating that Johnson's counsel sent Ritters' counsel a revised P&S three days after the execution date specified by the OTP).[4]

Although Johnson asserts in his affidavit that he would not have signed the OTP "[b]ut for" David Ritter indicating that the parties "would work out the details concerning the summer rental and [Johnson's] family's use of the home post-closing," D. 49-1 ¶ 13; D. 50 ¶ 86, "[t]here is no surer way to find out what parties meant, than to see what they have done." Browning-Ferris Indus., Inc. v. Casella Waste Mgmt. of Mass., Inc., 79 Mass. App. Ct. 300, 309 (2011) (quoting Martino v. First Natl. Bank, 361 Mass. 325, 332 (1972)); see Greene v. Ablon, 794 F.3d 133, 147 (1st Cir. 2015) (noting that "the formation of a valid contract under Massachusetts law requires objective, not subjective, intent"). Here, such conduct does not suggest that the OTP omitted any material terms to that agreement but, instead, confirms that the parties intended to bind themselves. See, e.g., D. 39-17 at 2 (stating that Johnson "hope[s] that the [Ritters] will agree . . . to terminate this transaction" and "now regrets that he signed the [OTP] without obtaining his wife's assent to

---

[4] The more recent cases cited by Johnson in his reply brief, D. 60 at 3, do not warrant a different outcome where they reiterate the reach of McCarthy, see Battle v. Howard, 489 Mass. 480, 492 n. 12 (2022) (rejecting plaintiff's characterization that McCarthy required that "in all cases the accepted offer to purchase and not the [P&S] constitutes the contract for sale," but reiterating that McCarthy "was limited to cases in which all material terms are agreed to and contained in the offer to purchase") or denied cross motions for dismissal and judgment on the pleadings given the factual allegations and denial of same by the defendant, El Nar v. Salis, No. 20-P-760, 2022 WL 2674226, at *2 (Mass. App. Ct. July 12, 2022), where here the Court considers the parties' cross motions for summary judgment.

the sale, as he should have").

Accordingly, the OTP constitutes a binding and enforceable contract to convey real property.

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS the Ritters' motion for partial summary judgment on Count I, D. 39, and DENIES Johnson's cross-motion for same, D. 54.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
