UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID M. RITTER and DIANE F. RITTER, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 21-cv-10815-DJC |
| JERRY JOHNSON, | ) ) ) | |
| Defendant. | ) ) ) ) | |

**MEMORANDUM AND ORDER ON DAMAGES**

**CASPER, J.**                                                                                          **September 26, 2023**

**I.      Introduction**

Plaintiffs David Ritter and Diane Ritter (collectively, the "Ritters") have filed this lawsuit against Defendant Jerry Johnson ("Johnson") alleging breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II) and promissory estoppel (Count III) arising from a real property transaction. D. 1. The Court granted summary judgment on Count I in favor of the Ritters, ruling that the offer to purchase ("OTP") for the Ritters to purchase Johnson's property at 30 Pond Lane, West Tisbury, Massachusetts (the "Property") was legally binding. D. 61 at 3.[1] The OTP provides for specific performance (i.e., conveyance of the Property from Johnson to the Ritters), D. 1-1 at 2, and other remedies. Johnson does not dispute specific performance, D. 78 at 6; D. 78-1 ¶ 14, but opposes the Ritters' pending motion for monetary damages in the amount of $1,013,844.27. D. 77. Having considered the Ritters' submissions, D.

---

[1] The Ritters subsequently informed the Court that it was not separately pursuing Counts II and III as they were "alternative avenues" for liability and damages. D. 65 at 1.

1

77, 83, 97 and Johnson's opposition, D. 78, and the oral argument of counsel, D. 96, and for the reasons stated below, the Court ALLOWS the motion in part, awarding damages of $ 568,919.41.

## II. Monetary Damages Sought by the Ritters

The Ritters seek damages in addition to specific performance to provide them "with the benefit of their bargain" with Johnson.  D. 77 at 1.  They seek damages on two bases.  First, the bulk of their damages, namely $973,844.27, represents differential between the favorable mortgage interest (2.99%) that they were able to lock in to finance 75% of the purchase price for the original July 16, 2021 closing date for the Property under the OTP, D. 77-1 and the date of final judgment in this matter (where, as the Ritters' expert, Kimberly A. Train ("Train"), a CPA, the interest rates have risen, for one example, to 6.94% as of October 20, 2022, D. 77-16 at 3).  D. 77 at 1.  Second, the remainder of the damages award, namely $40,000, they seek are legal transaction fees associated with completing the real estate transaction for the Property.[2]  Id.

As an initial matter, the Court recognizes that it may award damages even if it also requires specific performance (i.e., transfer of the Property from Johnson to the Ritters) here.  Although the parties agree that the general rule for breach of contract recovery is giving the wronged party "the benefit of his bargain, i.e., [so as to] be placed in the same position as if the contract has been performed."  Pierce. v. Clark, 66 Mass. App. Ct. 912, 914 (2006) (quoting VMark Software, Inc. v. EMC Corp., 37 Mass. App. Ct. 610, 611 n. 2 (1994)), Johnson disputes that that damages in addition to specific performance is warranted here.  Ordinarily, requiring specific performance will give a plaintiff the benefit of his bargain in regard to a contract to convey land.  Id.  There is,

---

[2] Ritters note that there are additional damages (i.e., lost rental income at the Property; expenses associated with the "1031 exchange" that was contemplated with the scheduled sale on July 16, 2021; and damages associated with the deteriorated condition of the Property as revealed in a October 2022 inspection, D. 77 at 7) that they are not pursuing in an "effort to simplify the litigation and to reach finality of this dispute."  Id.

however, nothing in the cases cited by either side that such award of specific performance precludes monetary damages. See, e.g., id. Instead, the case law recognizes that monetary damages may also be required to put the plaintiff in "as good position financially as he would have been in if there had been no breach" but he "may not insist upon extraordinary or unforeseen elements of damage, but only such as flow according to common understanding as the natural and probable consequences of the breach and such as may be presumed to have been in the contemplation of the parties at the time the contract was made." Pierce, 66 Mass. App. Ct. at 914 (internal citation and quotation marks omitted) (declining to award damages, not because specific performance had been granted, but because they were "purely speculative and not proven to a reasonable certainty by sufficient or substantial evidence"); see Perroncello v. Donahue, 448 Mass. 199, 205 (2007) (ruling that the seller was entitled to specific performance of real estate contract and damages, i.e., carrying costs that he incurred as a result of the delay between the planned closing date and the actual date of conveyance); K & K Development, Inc. v. Andrews, No. 22-P-851, 2023 WL 5986501, at *8 (Sept. 15, 2023) (citing Perroncello for this same legal principle and "discern[ing] no error in the award of lost profit damages for the period postdating the agreed on closing date"); Motsis v. Ming's Supermarket, Inc., 96 Mass. App. Ct. 371, 378 (2019) (rejecting argument "that a party cannot obtain both contract damages and specific performance" and citing Perroncello). Here, where the Court will grant specific performance for conveyance of the Property to the Ritters, it now turns to whether the monetary damages are non-speculative and proven by a reasonable certainty.

  A. **Mortgage Interest Rate Differential**

Under the OTP, the Ritters agreed to purchase and Johnson agreed to sell the Property by or before July 16, 2021. D. 1-1 at 1; D. 77-3 ¶ 4. The purchase price of $2,207,500 was financed

by a thirty-year fixed mortgage of $1,655,625.00 at a rate of 2.99 percent over the life of the loan. D. 77 at 1–2; D. 77-2 at 2; see D.77-1 at 3. Although the OTP contained no provision about the mortgage interest rate, it was contingent upon the Ritters' "ability to obtain a mortgage for up to 75% of the purchase price at a fair and equitable market rate." D. 1-1 at 3. Johnson refused to sell the Property and the "exceedingly beneficial" rate expired on July 16, 2021. D. 77 at 2. The Ritters maintain that they will need to finance this acquisition at the standard and best rates available from the same lender once Johnson conveys the Property. Id. As of October 26, 2022, the date the damages motion was filed, the market rate was 6.94 percent. Id. at 10; see 77-10 at 3. As of February 16, 2023, the market rate was 6.32 percent. D. 83 at 2; see D. 83-1 at 4. The Court takes judicial notice of the fact that this interest rate has risen to 7.19 percent as of September 21, 2023. [30-Year Fixed Rate Mortgage Average in the United States (MORTGAGE30US) | FRED | St. Louis Fed (stlouisfed.org)](#) (last visited Sept. 26, 2023).

To calculate their market rate interest rate differential damages, the Ritters rely on Train's expert report. D. 77-2 (Train report, May 6, 2022); D. 77-16 (Train affidavit, October 25, 2022). Train determined that the 2.99 percent fixed interest rate for the original loan would have resulted in interest payments of $854,027.08 over the life of the loan. D. 77-2 at 4. Train also noted that when the Ritters locked into this rate on April 26, 2021, such rates in the United States were at historic lows. Id. at 4. On May 6, 2022, the date of the Train report, the prevailing interest rate was 5.27 percent. Id. Train determined that if this rate were locked in effectively as of April 28, 2022, this would result in interest payments of $1,643,034.29 over the life of the loan. Id. This amounts to a difference of $789,007.21, or if factoring in the present value of money at a normalized risk-free rate of three percent per year, $568.919.41. Id. at 5.

4

Train "brought forward" her May 6, 2022 analysis to the prevailing thirty-year interest rate in October 20, 2022 (around the date of her October 25th affidavit) of 6.94 percent. D. 77 at 11; see D. 77-16 ¶¶ 6–8. According to the Ritters, the "interest rate differential between The Ritters' Original Loan (with an interest rate of 2.990%) and a loan in the same principal amount as of October 2022 (with an interest rate of 6.940%) totals $973,844.27 (i.e., $1,431,728.96 over the life of the loan discounted to present value at a rate of 3.5% per annum, as published by Kroll (formerly known as Duff & Phelps), to account for the time value of money)." D. 77 at 11.

The Ritters assert that they calculated these damages in the same way as other courts have when confronted with the issue of whether specific performance alone will make the non-breaching party whole when the seller of real estate fails to deliver same as promised. The Court has found the cases cited by the parties instructive and although the "unpublished" ones are not binding, they remain persuasive for the reasons discussed herein. Recognizing that "the usual measure of damages applied to the breach of a purchase and sale agreement does not always adequately compensate the injured party for his loss," Lloyd v. Mahoney, No. 98-01835, 1999 WL 34791323, at *1 (Sup. Ct., Nov. 23 1999) (unpublished) (citing cases including Foster v. Bartolomeo, 31 Mass. App. Ct. 592, 595-96 (1991)), and where that "usual rule" ("difference between the contract price and the market price of the property on the date of the breach") is inadequate, "a court may consider the actual losses sustained as a result of a breach when the losses are reasonably foreseeable or within the contemplation of the parties." Id. (citing cases including Foster, 31 Mass. App. Ct. at 596); Brewster Wallcovering Co. v. Blue Mt. Wallcovering, Inc., 68 Mass. App. Ct. 582, 614 (2007) (noting that "damages must have been reasonably foreseeable as a natural and probable result of a breach of contract at the time the contract was made").

5

In Lloyd, the court concluded that the plaintiffs had "lost the favorable, low mortgage rate" over thirty years and awarded the present value of the difference in mortgage interest payments as part of the damages award in addition to specific performance. Id., aff'd, 53 Mass. App. Ct. 1107, 2001 WL 1561843, at *2 (Dec. 6, 2001) (unpublished) (affirming judgment, but failing to reach defendant's challenge to damages for increased mortgage rates because she had failed to preserve that issue for review, but noting that the parties agreement contained "no provision limiting the buyer's remedies in the event of breach by the seller" so "the judge could properly order specific performance of the contract and then award consequential damages"); see Motsis, 96 Mass. App. Ct. at 379 (affirming judgment where trial court "reasonably could have concluded that [breaching party] should be required both to perform the relevant obligations of the lease in the future and to pay damages caused by his previous failure to do so and for any period of delay in completing specific performance"); Pistoftzian v. Carrasquillo, No. 1881-cv-03562, 2021 WL 5015673, at *14 (Mass. Land Court Oct. 28, 2021) (unpublished) (citing Perroncello, 448 Mass at 205-06 and Motsis, 96 Mass. App. Ct. at 377-78 in awarding specific performance and "carrying costs" of monthly rent that plaintiff had to pay where defendant did not deliver the property as required under the OTP). Such "damages elements . . . appear to fall clearly within the ambit of an appropriate award." Chamberlain v. Nuissl ("Chamberlain I"), 71 Mass. App. Ct. 1101, 2007 WL 4463073, at *3 (Dec. 20, 2007) (unpublished) (addressing plaintiff's claim that "he had secured a mortgage at a fixed rate of a little less than six percent for the originally scheduled closing" and that "the lowest rate presently available is a little less than eight percent" and concluding that "[w]e are unable to discern any principled reason why a natural and foreseeable result of the [defendants'] breach and delay would not be increased mortgage costs" and observing that plaintiff "would be entitled ot the difference in mortgage costs, which he claims, over the life of the loan

(and reduced to net present value)"); Chamberlain v. Nuissl ("Chamberlain II"), 75 Mass. App. Ct. 1113, 2009 WL 3834417, at * 1 & n. 7 (Nov. 18, 2009) (unpublished) (noting that "interest rate differential was a valid basis for contract damages" involving the sale of real estate and affirming as much of award as related to interest rate damages on remand, $31,476.99, but vacating award of damages for temporary housing and storage).

As summarized above, determining the mortgage interest differential has been adopted as a measure of damages where a court has concluded that specific performance is not sufficient to give a plaintiff the benefit of his bargain (which this Court concludes here given Johnson's breach of the OTP and failure to deliver the Property). The Ritters' calculations as to the mortgage differential can be summarized in three steps. First, the Ritters calculated the monthly interest payments on the original loan as if Johnson had conveyed the Property by July 16, 2021 and multiplied this by 360 months, the 30-year life of the loan. See D. 77 at 12–13. Second, the Ritters applied the same formula to a new loan (with the increased, prevailing interest rate). Id. at 13–14. Finally, the Ritters applied the prevailing discount rate to account for the present value of money and subtracted this from the interest rate differential. Id. at 14–15.

Johnson objects to this measure of damages (and the calculation of same) on a number of grounds. First, Johnson asserts that the Ritters' interest damages are speculative because "[i]nterest rates go up and down based on the benchmark set by the Federal Reserve as a result of fluctuations in our economy" and such "economic fluctuations are not a foreseeable and predictable consequence of the delay or breach of an offer to purchase." D. 78 at 9. The fluctuation of interest rates is correct, but the uncontroverted record here is at the time of the OTP, such interest rates were at historic lows and the parties' agreement was contingent on the Ritters obtaining a mortgage for substantial amount of the purchase price (up to 75%) at "fair and equitable market

rate" which would have been at the historically low rate. D. 1-1 at 3. Given this contingency and that Johnson was aware that the Ritters considered him in breach as of his failure to deliver the Property on July 16, 2021, 77-4 (July 16, 2021 letter to counsel); see 77-6 (as of November 24, 2021, identifying damages to include, but not be limited to, "incremental interest expense over [the] life of the mortgage"), it is hard to see how a rise in the interest rate was not a foreseeable and natural and probable consequence of the seller's breach of the OTP and failure to transfer the Property. Second, Johnson objects that these damages are speculative because the Ritters have not obtained a new mortgage loan at any rate of interest. Id. at 10. Again, however, the controverted record (based primarily on Train report, D. 77-2, Train affidavit, D. 77-16, exhibits thereto) is a thirty-year mortgage is not available at the historic low of July 2021 and any interest rate would be higher. D. 77-2 at 4; D. 83-1. Third, Johnson contends that Ritters could mitigate their damages through refinancing the mortgage, the payment of points (pre-paid interest) or reselling the Property. D. 78 at 10–11; see Chamberlain I, 2007 WL 4463073, at *3 n.8 (noting that the trial court should considered whether plaintiff "is entitled to such increased costs over the full term of the loan or over some shorter period the loan would likely actually have been outstanding (by reason, for example, of sale of the unit or refinancing the loan"). Again, the uncontroverted evidence is that Ritters may have a reduced opportunity to refinance given their reduced income over the coming years, D. 77-11 at ¶¶ 7-13, and indicates that the purchase of the Property was as a legacy property for retirement. D. 77 at 6; see D. 77-11 at ¶¶ 10-11. Lastly, Johnson has objected to the length of thirty years of the mortgage where the average home ownership does not last as long. D. 77-13 at 3. On this record, however, that is not true for property on Martha's Vineyard, where the Property is located, are held, on average, for over thirty years. D. 77 at 7; 77-7 ¶ 6; see D. 77-12. Accordingly, none of these objections warrants rejecting this form of monetary damages

that the Ritters seek in addition to specific performance.

The Court, however, has considered Johnson's objections in the measure and reasonable amount of damages that should be awarded as to the mortgage interest differential. First, given the fluctuating nature of the interest rate, the Court has also considered whether it should award the differential based upon the mortgage interest rate at the time of judgment (which, given the current rate of 7.19 %, is likely to increase) or at the 5.27% rate (as of May 5, 2022) which is the lowest interest rate presented in this record. D. 77-2 at 2; D. 77 at 15. Second, the Court has considered applying the discount rate of 3.0%, the Kroll Risk Free Rate that applied per annum, to reach the present value of additional interest. D. 77 at 15 & n.21. Accordingly, the Court awards damages in the amount of $568,919.41 (reflecting present value of additional interest over the thirty-year life of the loan between 2.99% original rate and the 5.27% rate, D. 77 at 15; D. 77-2 at 43) and not the $963,844.27 that the Ritters now seek. The Court concludes that this amount is reasonably calculated and non-speculative, based on sound analysis by the Ritters' expert, Train, and supported by substantial evidence in the record as discussed above. The Court will allow that this amount, $568,919.41 may be made as a credit paid to the Ritters contemporaneous with the closing on the Property. D. 77 at 20.[3]

**B.**     **Legal Transaction Fees**

The Ritters also assert that they are entitled to $40,000 in legal transaction fees. D. 77 at 18–19. The Ritters rely upon the affidavit of their transactional counsel, who estimates that the Ritters will incur $20,000 to $40,000 in fees to complete the real estate transaction. D. 77-4. Although the Court has not been given any reason to doubt the sum of these expected fees which

---

[3] The Court also will impose prejudgment interest at the statutory rate of 12% per annum from the date of closing (July 16, 2021) to the date of judgment as requested by the Ritters.

is based upon an estimate of litigation counsel's hourly fees, id. at ¶ 16, the premise of the calculations, however, is based upon Johnson's non-cooperation moving forward to closing. See id. ¶ 13 (expecting that "the Ritters will incur additional fees and expenses arising out of the logistics and practicalities of effectuating a closing with a non-cooperative (and potentially obstructive) Seller"). Given Johnson's attestation that he has "never expressed any intention to interfere with the closing if I am ordered to do so," D. 78-1 ¶ 14; D. 78 at 11, and that an order to do so will be part of the judgment in this case, the Court does not, at this time, conclude that the anticipated transaction fees are reasonably calculated and declines to award same at this time. See Pistoftzian, 2021 WL 5015673, at *14.

**III.  Conclusion**

For the foregoing reasons, the Court ALLOWS the Ritters' motion for damages, D. 77, in part and awards damages in the amount of $ 568,919.41 (as to the mortgage interest differential), but otherwise denies the motion. The Court further ORDERS:

A.  Counsel to confer to set a date for the closing on the Property and execution of the deed to the Property from Johnson to the Ritters and file a Proposed Order of Judgment;

B.  Such Proposed Order of Judgment shall reflect judgment for the Ritters on Count I as reflected in D. 61 (July 21, 2022 summary judgment Memorandum & Order); that the Ritters are not pursuing Counts II and III (as reflected in D. 65); the date for closing on the Property and execution of the deed for same; the entry of the damages in the amount of $568,919.41 (as ordered in this Memorandum & Order); that this damages award may be in the form of a seller's credit to the Ritters contemporaneous with the closing on the Property (as ordered in this Memorandum and Order); and shall include prejudgment interest at the statutory rate of 12% per annum from the date of closing (July 16, 2021) to the date of judgment (as ordered in this Memorandum & Order);

C. The parties shall file such Proposed Order of Judgment for the Court's review and signature by October 17, 2023; and

D. The Court also ALLOWS the parties' assented to motion to reopen discovery for the limited purpose of inspecting the Property and issuing subpoenas to the Property's lienholders of record to obtain mortgage statements from September 8, 2022 to the present. D. 98. The inspection of the Property shall occur by October 10, 2023.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge